RENDERED: MARCH 27, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0014-MR


SOUTHPOINTE PARTNERS, LLC
AND 9402 BARTLEY HOMESTEAD,
LLC                                                                    APPELLANTS


|            | APPEAL FROM JEFFERSON CIRCUIT COURT |
|------------|--------------------------------------|
| v.         | HONORABLE AUDRA J. ECKERLE, JUDGE    |
|            | ACTION NO. 20-CI-007221              |


LOUISVILLE/JEFFERSON COUNTY
METRO GOVERNMENT; AARON
JENKENS; ANDREW BOLYARD;
BRITTNEY J. BOLYARD;
CHRISTIAN B. JENKENS;
COURTNEY E. JENKENS; DERRICK
AYERS; EVANSVILLE TEACHERS
FEDERAL CREDIT UNION, D/B/A
LIBERTY FINANCIAL; GARY W.
JENKENS REVOCABLE TRUST;
GARY W. JENKENS REVOCABLE
TRUST DATED MAY 6, 1999; GARY
W. JENKENS, IN HIS CAPACITY AS
TRUSTEE OF THE GARY W.
JENKENS REVOCABLE TRUST, IN
HIS CAPACITY AS THE TRUSTEE
OF THE GARY W. JENKENS
REVOCABLE TRUST DATED MAY
6, 1999; GARY W. JENKENS, IN HIS
INDIVIDUAL CAPACITY; HEATHER

J. AYERS; LEGISLATIVE BODY OF
THE LOUISVILLE/JEFFERSON
COUNTY METRO GOVERNMENT,
A/K/A METRO COUNCIL;
LOUISVILLE AND METRO
PLANNING COMMISSION;
SUSANNE W. JENKENS
REVOCABLE TRUST; SUSANNE W.
JENKENS REVOCABLE TRUST
DATED MAY 5, 1999; SUSANNE W.
JENKENS, IN HER CAPACITY AS
TRUSTEE OF THE SUSANNE W.
JENKENS REVOCABLE TRUST, IN
HER CAPACITY AS TRUSTEE OF
THE SUSANNE W. JENKENS
REVOCABLE TRUST DATED MAY
5, 1999; SUSANNE W. JENKENS, IN
HER INDIVIDUAL CAPACITY; AND
SUZANNE JENKENS                                                    APPELLEES

AND

NO. 2023-CA-0358-MR

SOUTHPOINTE PARTNERS, LLC
AND 9402 BARTLEY HOMESTEAD,
LLC                                                                     APPELLANTS

                          APPEAL FROM JEFFERSON CIRCUIT COURT
v.            HONORABLE MELISSA L. BELLOWS, JUDGE
                          ACTION NO. 20-CI-007221

LOUISVILLE/JEFFERSON COUNTY
METRO GOVERNMENT; AARON
JENKENS; ANDREW BOLYARD;
BRITTNEY J. BOLYARD;

-2-

CHRISTIAN B. JENKENS;
COURTNEY E. JENKENS; DERRICK
AYERS; EVANSVILLE TEACHERS
FEDERAL CREDIT UNION, D/B/A
LIBERTY FINANCIAL; GARY W.
JENKENS REVOCABLE TRUST;
GARY W. JENKENS REVOCABLE
TRUST DATED MAY 6, 1999; GARY
W. JENKENS, IN HIS CAPACITY AS
TRUSTEE OF THE GARY W.
JENKENS REVOCABLE TRUST, IN
HIS CAPACITY AS TRUSTEE OF
THE GARY W. JENKENS
REVOCABLE TRUST DATED MAY
6, 1999, AND IN HIS INDIVIDUAL
CAPACITY; HEATHER J. AYERS;
LEGISLATIVE BODY OF THE
LOUISVILLE/JEFFERSON COUNTY
METRO GOVERNMENT, A/K/A
METRO COUNCIL; LOUISVILLE
AND METRO PLANNING
COMMISSION; SUSANNE W.
JENKENS REVOCABLE TRUST;
SUSANNE W. JENKENS
REVOCABLE TRUST DATED MAY
5, 1999; SUSANNE W. JENKENS, IN
HER CAPACITY AS TRUSTEE OF
THE SUSANNE W. JENKENS
REVOCABLE TRUST, IN HER
CAPACITY AS TRUSTEE OF THE
SUSANNE W. JENKENS
REVOCABLE TRUST DATED MAY
5, 1999, AND IN HER INDIVIDUAL
CAPACITY; AND SUZANNE
JENKENS                                                                    APPELLEES

AND

NO. 2024-CA-0841-MR

SOUTHPOINTE PARTNERS, LLC
AND 9402 BARTLEY HOMESTEAD,
LLC                                                                                    APPELLANTS


                              APPEAL FROM JEFFERSON CIRCUIT COURT
v.                          HONORABLE MELISSA L. BELLOWS, JUDGE
                                      ACTION NO. 20-CI-007221


LOUISVILLE/JEFFERSON COUNTY
METRO GOVERNMENT; AARON
JENKENS; ANDREW BOLYARD;
BRITTNEY J. BOLYARD;
CHRISTIAN B. JENKENS;
COURTNEY E. JENKENS; DERRICK
AYERS; EVANSVILLE TEACHERS
FEDERAL CREDIT UNION, D/B/A
LIBERTY FINANCIAL; GARY W.
JENKENS; GARY W. JENKENS
REVOCABLE TRUST; GARY W.
JENKENS REVOCABLE TRUST
DATED MAY 6, 1999; GARY W.
JENKENS, IN HIS CAPACITY AS
TRUSTEE OF THE GARY W.
JENKENS REVOCABLE TRUST, IN
HIS CAPACITY AS THE TRUSTEE
OF THE GARY W. JENKENS
REVOCABLE TRUST DATED MAY
6, 1999; HEATHER J. AYERS;
LEGISLATIVE BODY OF THE
LOUISVILLE/JEFFERSON COUNTY
METRO GOVERNMENT A/K/A
METRO COUNCIL; LOUISVILLE
AND METRO PLANNING
COMMISSION; SUSANNE W.
JENKENS; SUSANNE W. JENKENS

-4-

REVOCABLE TRUST; SUSANNE W.
JENKENS REVOCABLE TRUST
DATED MAY 5, 1999; SUSANNE W.
JENKENS, IN HER CAPACITY AS
TRUSTEE OF THE SUSANNE W.
JENKENS REVOCABLE TRUST AND
TRUSTEE OF THE SUSANNE W.
JENKENS REVOCABLE TRUST
DATED MAY 5, 1999; AND
SUZANNE JENKENS                                                    APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, L. JONES, AND McNEILL, JUDGES.

COMBS, JUDGE:  This is an appeal of several orders of the Jefferson Circuit
Court.  The dispute concerns the unanimous decision of the Legislative Body of
the Louisville/Jefferson County Metro Government to approve a zone change
application.  Approval of the application authorized construction of a branch of a
credit union on property adjoining the eastern terminus of Bartley Drive and the
west side of Bardstown Road south of the Gene Snyder Freeway.  The
development plan included public access across the site to an existing signalized T-
intersection at Bardstown Road and Southpointe Boulevard.  After our review, we
affirm.

On February 17, 2020, Evansville Teachers Federal Credit Union (the credit union) filed a zone change pre-application for several tracts of real property located directly across Bardstown Road from SouthPointe Commons. SouthPointe Commons is a commercial development composed of more than 360,000 square feet of retail space. Entrance to the development from Bardstown Road is accessed by a T-intersection with SouthPointe Boulevard. Its developers are referred to herein as "SouthPointe."

The credit union proposed a zone change from R-4 (residential) to C-1(commercial) to facilitate construction of its branch. It advised Louisville Metro Planning & Design Services that a neighborhood meeting to discuss its plans was scheduled for March 2, 2020.

A summary of the neighborhood meeting was submitted with the credit union's application for zone change. The lengthy summary reported that the credit union's representatives discussed with neighbors its proposed access from the site to Bardstown Road by means of construction of a drive joining the existing T-intersection at SouthPointe Commons. The summary related that neighbors asked whether the developer would allow them to cross the property to access Bardstown Road at the signalized intersection rather than at the existing terminus of Bartley Drive at a point on Bardstown Road closer to the I-265 interchange -- a point of access to Bardstown Road **not governed by a traffic signal**.

The credit union explained that it had not anticipated or considered that residents would want another connection to Bartley Drive from Bardstown Road. Residents indicated that they wanted access to the signalized intersection both for safety and convenience and that they would support closure of the eastern-most portion of Bartley Drive (crossing the site north of the signalized intersection) in favor of direct access (across the south side of the development site) to the traffic signal at Bardstown Road and SouthPointe Boulevard. The credit union's representatives indicated that they would consider whether the credit union could accommodate the neighbors' preference for a right-of-way accessing the signalized intersection.

A staff report was filed on March 4, 2020, indicating that the credit union's proposed rezoning conformed to land use and development policies. Specifically, it advised that the proposed use of the property "allows for a continuation of the commercial corridor from I-265 to serve a growing population" and "introduces neighborhood serving goods and services to fill gaps in commercial services and on vacant land along the corridor." A further report, prepared on April 13, 2020, indicated that "a 50' public right-of-way from the signalized intersection to Bartley Drive is needed." It recommended connectivity from the credit union site to the proposed right-of-way along the southern portion

of the tract. "This allows Bartley Drive to be closed between tracts 1 and 2 and consolidated development of those tracts."

On April 13, 2020, the credit union filed its statement of compliance and development plan. The compliance statement provided a detailed and comprehensive narrative of exactly how the proposed rezoning and development complied with the Comprehensive Plan. It also referred specifically to "the proposed roadway dedication through the site with the requested separate road closure providing low intensity uses in an area of a traffic signal."

On May 11, 2020, the credit union filed a street closure application. It requested closure of that eastern-most portion of Bartley Drive that now joined Bardstown Road north of the T-intersection with Southpoint Boulevard. It proposed to reconfigure the right-of-way to cross the south side of its site to align with the signalized intersection of SouthPointe Boulevard and Bardstown Road. This realignment would allow residents of Bartley Drive to access the traffic signal on Bardstown Road and to safely execute northbound left turns toward the I-265 interchange. The credit union explained that "[t]he prior proposed development plan showed just the subject property having access to the traffic signal." But in order to accommodate the request of the Bartley Drive residents, the credit union was willing to dedicate a public right-of-way across its site. However, the redesign would require the original right-of-way across the northerly portion of the site to be

closed, permitting the credit union to retain "enough area to still locate a branch bank on the subject property." The credit union assured Louisville Metro Planning & Design Services that it had "received 100% consent from the adjoining property owners and would ask that the street closures move forward in conjunction with the zone change [application submitted on April 13, 2020.]"

On June 25, 2020, the Land Development and Transportation Committee conducted a hearing with respect to the zone change request. Southpointe representatives appeared at the meeting and opposed the credit union's application for a zone change. SouthPointe objected to construction of an additional leg of traffic at the intersection, arguing that the intersection would no longer function as originally intended. Its representatives noted that when Southpointe had sought approval for its development in May 2010, Commissioner Tom Stockton opined that the intersection would fail if an additional leg of traffic were added. The Committee voted unanimously to continue the matter to July 2020, giving the credit union time to gather information about the traffic impact of an additional leg of traffic at the T-intersection.

At the July 2020, hearing, the credit union presented an updated plan (including a raised median between in-coming and out-going traffic at the signal to prevent drivers from turning onto Bartley Drive just to head south again) and a traffic impact study prepared by Diane Zimmerman, a Louisville-based traffic

engineer. Zimmerman's testimony included a discussion of the timing of the traffic signal at the disputed intersection. She indicated that even if an additional leg of traffic were added to the intersection, drivers would not likely have to wait through an additional cycle of the signal before exiting SouthPointe Commons. Zimmerman remarked that changes to the timing of the traffic signal would be required in any event given the continued development at SouthPointe Commons and issues concerning the safety of pedestrians crossing the wide intersection. The credit union's prospective neighbor to the north testified that access to the T-intersection from Bartley Drive would be essential to the orderly development of the west side of Bardstown Road.

SouthPointe representatives reiterated their objections to an additional leg of traffic at the T-intersection. SouthPointe contended that approval of the change in zoning application would be arbitrary, capricious, and unreasonable because rezoning the subject property did not meet requirements of the Comprehensive Plan. In rebuttal, the credit union referenced a 2017 traffic impact study demonstrating that the disputed intersection could accommodate more intense development on the west side of Bardstown Road. Despite SouthPointe's opposition, the committee decided to forward the zoning application to the Louisville and Metro Planning Commission for consideration.

On August 20, 2020, the planning commission conducted a public hearing to consider the credit union's application. Commissioners considered a detailed development plan; live testimony; a power-point presentation; renderings of the proposed credit union branch; a description of proposed landscaping and privacy fencing for adjoining property owners; sewage and drainage control measures; pedestrian and bicycle accessibility; Zimmerman's traffic impact study that included the proposal to move the eastern-most portion of Bartley Drive farther south to align with the signalized T-intersection at Southpoint Boulevard and Bardstown Road; remarks both in favor of and opposed to the zone change; and its staff's analysis of the application.

The staff report explained to the planning commission that realigning Bartley Drive with the signalized intersection would provide residents with safe access to Bardstown Road and that a street closure application for a portion of Bartley Drive had been submitted and was in the review process. Commissioners were aware that the Kentucky Transportation Cabinet would require a permit for the proposed construction of access to the existing intersection at Bardstown Road and Southpoint Boulevard and that the Cabinet would dictate the design of any additional leg of traffic. Commissioners noted that the credit union branch would be a "very small trip generator" when compared to the immense development

directly across Bardstown Road at SouthPointe Commons and "will not generate a lot of traffic."

SouthPointe presented evidence in opposition. A representative stated that he was "limit[ing] my comments to traffic, that's the only reason that we are here today, traffic and traffic infrastructure. . . and the signalization of the proposed fourth leg into the Bartley Drive and Bardstown Road intersection." SouthPointe presented the testimony of Jeff Weller, a traffic engineer from North Carolina. Weller did not perform a traffic impact study. Instead, his testimony focused on the perceived shortcomings in Zimmerman's study. Finally, a Southpointe representative wondered in passing if "it's appropriate to apply a closure of a public right-of-way to what might be a private street. . . ."

As it deliberated, the Commission specifically observed that commercial development in the district served nearby residents as well as those utilizing the Bardstown Road corridor and the nearby interstate -- and that roadway improvements could realign Bartley Drive to the signalized intersection so as to provide for safe, convenient access for residents to Bardstown Road and SouthPointe Boulevard. The Commission approved the development plan and voted unanimously to recommend that the zone change application be approved. However, the development plan included a binding element that prohibited

changes to the current configuration of Bartley Drive until a new section of road was built to link Bartley Drive to the signalized T-intersection.

On November 19, 2020, the Legislative Council of the Louisville/Jefferson County Metro Government read and -- by unanimous agreement -- passed an ordinance approving the proposed zone change subject to the binding elements included in the planning commission's recommendation. The Legislative Council indicated that "any changes in use on the property, and/or any amendments to the binding elements shall be reviewed before the Planning Commission with final action to be determined by Metro Council." The credit union's road closure application pertaining to the eastern-most portion of Bartley Drive remains pending.

On December 16, 2020, Southpointe and 9402 Bartley Homestead, LLC (referred to collectively, hereinafter, as "Southpointe"), filed a civil action in Jefferson Circuit Court against Louisville/ Jefferson County Metro Government; Louisville and Metro Planning Commission; the Legislative Body of the Louisville/Jefferson County Metro Government (referred to collectively hereinafter as "Metro Government"); the credit union; and each of the owners of the subject real property. In the complaint, 9402 Bartley Homestead, LLC, is identified as owners of property "underlying, abutting and/or adjacent to Bartley Drive" and the right-of-way itself. It was allegedly organized as a result of the purchase by a

-13-

member of Southpointe of a $25,000 vacant lot for the sole purpose of establishing standing in order to oppose the rerouting of the eastern-most section of Bartley Drive. Following a ten-page recital outlining the benefits of its development of SouthPointe Commons, Southpointe alleged that approval of the credit union's application for a zone change was arbitrary because the decision was not supported by substantial evidence; exceeded Metro Government's authority; and deprived Bartley Drive residents of due process.

In its complaint, SouthPointe explained that it did not oppose commercial development on the west side of Bardstown Road. Nor did it oppose the proposal to realign Bartley Drive to have it "plug in" to the T-intersection at SouthPointe Boulevard. Instead, it "firmly oppose[s] any such action unless and until it is supported by sufficient evidence showing that the action will not put the Intersection [and its investment in SouthPointe Commons] at risk of failure." SouthPointe explained further that it had been required to "(a) demonstrate the impact of its development on traffic at the Intersection, the corridor, and the community as a whole, and (b) pay for the traffic improvements needed to ensure that traffic would move efficiently and effectively through the corridor." It contended that Metro Government "must now likewise require anyone seeking to plug in . . . to this critical Intersection to do the same. . . ." It alleged that Metro "did not perform the required comprehensive planning. . . ."

Along with its statutory appeal of the zone change approval filed pursuant to the provisions of KRS[1] 100.347, SouthPointe included a petition for declaratory judgment and a request for injunctive relief. SouthPointe argued that neither the zone change application, nor the road closure application could be approved because a fatal flaw tainted them both: namely the nature of Bartley Drive *as a private road* -- not a public right-of-way. It sought a declaration that approval of the zone change application (with a development plan that allowed reconfiguration of Bartley Drive to realign it with the T-intersection at Bardstown Road and SouthPointe Boulevard) was a nullity because Metro Government could not, as a matter of law, authorize the closure of the end of Bartley Drive joining Bardstown Road. It averred that according to the Land Development Code, Chapter 6.3.3., **only a "public right-of-way" may be closed**.

It alleged that the private road was jointly owned and maintained by all of the property owners and could only be closed by unanimous consent of all its owners. It also alleged that Metro Government could not obtain the required approval. It pointed out that a street sign at the far eastern end of Bartley Drive labelled the road as "private." Furthermore, Metro Government's online resource identified all of Bartley Drive as "non-metro" -- and not state owned. SouthPointe sought an injunction:

---

[1] Kentucky Revised Statutes.

-15-

prohibiting [Metro Government] from arbitrarily approving any rezoning or related development plans allowing the addition of a fourth leg to the Intersection. This injunction should include, but not be limited to, a requirement that any applicant seeking to add a fourth leg to the Intersection must perform an extensive traffic analysis and includes, but is not limited to, the nearby Bardstown Road corridor, surrounding neighborhoods, SouthPointe Boulevard, and Bates Elementary School so that [Metro Government] can determine what, if any, improvements to the Intersection or related roadway it will need to require of the developer to ensure that the Intersection does not fail, and to ensure that mobility and air pollution in the area are adequately addressed in compliance with the Comprehensive Plan -- just as SouthPointe Commons was required to do when it applied to rezone the land across the street.

And, they petitioned that because Bartley Drive is private:

this Court should enter a declaration and injunction prohibiting [Metro Government] from approving any zoning, development plan, street closure, or any other development application premised upon the rerouting of, closure of, or development on any portion of Bartley Drive unless all landowners who own Bartley Drive have first unanimously consented to the proposed rerouting, closure, or development.

The credit union answered the complaint. Metro Government also filed its timely answer along with a motion to dismiss and a petition for a declaratory judgment. In its motion to dismiss, Metro Government summarized the declaratory judgment action as a request to prohibit it from approving the credit union's zoning change request (which had already been done) and any related development plan authorizing access to the signalized T-intersection from the west

-16-

side of Bardstown Road (which had also already been done). Furthermore, the declaratory judgment action asked the court to require Metro Government to deny the street closure request and/or realignment of Bartley Drive before it had even considered the credit union's application filed May 8, 2020. It noted that the provisions of KRS 100.347 provide the exclusive remedy for an appeal from the actions of the planning commission and that a declaratory judgment action could not be substituted for that statutorily mandated procedure.

In an opinion and order entered on March 26, 2021, the Jefferson Circuit Court dismissed SouthPointe's request for declaratory judgment and injunctive relief. The court observed that the road closure application was still pending and that a public hearing concerning Bartley Drive had not yet occurred. It wrote: "[t]he issues are not ripe for appeal and must be addressed pursuant to prescribed statutory procedure. . . ." It declined to issue what it viewed as an essentially advisory opinion.

In July 2022, the credit union filed a motion for summary judgment with respect to the statutory appeal. It argued that Metro Government's decision to approve its application for zone change -- including access to the T-intersection at Bardstown Road and SouthPointe Boulevard -- was supported by substantial evidence. It also observed that the question of whether Bartley Drive is a private road or a public right-of-way had been raised by SouthPointe in a separate

proceeding -- in another petition for declaratory judgment filed in yet another division of the Jefferson Circuit Court. The credit union cautioned the court that hypothesizing about an abstract disagreement among the parties in this rezoning matter "would possibly render a decision that is contrary to a future decision in [the separate civil action filed by SouthPointe"].

In August 2022, Metro Government joined the credit union's motion for summary judgment and filed its own memorandum in support. Thereafter, SouthPointe filed a response and a cross-motion for summary judgment. Metro Government and the credit union filed their separate responses.

In its opinion and order entered on November 17, 2022, the Jefferson Circuit Court concluded that the Planning Commission relied upon substantial evidence in reaching its decision and that it did not act arbitrarily. In an order entered on December 6, 2022, the court affirmed the decision of Metro Government to approve the credit union's application for zone change and granted the credit union's motion for summary judgment. SouthPointe filed its notice of appeal.

Our review of the substantive issues presented in the parties' briefs has been delayed by prolonged and extensive practice in the circuit court addressing the good faith basis for the appeal and the requirements of an appeal bond. Additionally, the briefing schedule before us was interrupted by issues

arising with respect to newly discovered evidence concerning the fee-simple ownership of a portion of Bartley Drive by either the Commonwealth or Metro Government. At this juncture, the appeal is at last ready for adjudication.

The appellants stipulate that SouthPointe Commons, LLC, and 940 Bartley Homestead, LLC, have common ownership "and are pursing this appeal in lockstep." On appeal, SouthPointe argues that the circuit court erred by failing to conclude that Metro Government's approval of the rezoning application was arbitrary, capricious, and outside its statutory authority. First, it contends that the approval was premised upon Metro Government's mistaken impression that Bartley Drive can be closed through its administrative process. Secondly, it contends that Metro Government illegally "flip-flopped" on the planning commission's 2010 view that the disputed intersection could not effectively accommodate an additional leg of traffic.

SouthPointe also argues that the trial court erred by dismissing its petition for declaratory judgment because it did indeed present the court with a justiciable issue. It argues that the credit union's street closure application is "inextricably intertwined" with its zone change application and that the applications should have been considered and decided together. Instead, SouthPointe argues, Metro Government let the credit union "put the cart before the horse" -- "deciding the rezoning application *before* deciding the street closure

application upon which the rezoning application was premised." While SouthPointe acknowledges that binding elements of the approval require that the street closure application be granted before any project construction actually begins, it contends that the circuit court should have allowed the parties to litigate and fully develop the facts surrounding the status of Bartley Road immediately -- and in court, rather than through the administrative process.

We are persuaded that the circuit court did not err by concluding that this issue was not yet ripe for adjudication. Kentucky's Declaratory Judgment Act, codified in KRS Chapter 418, is intended to be remedial in nature. *Mammoth Medical, Inc. v. Bunnell*, 265 S.W.3d 205, 209–10 (Ky. 2008). Its purpose is to make courts more serviceable to citizens by way of settling controversies and affording relief from uncertainty and insecurity with respect to rights and duties. KRS 418.080. In light of its purpose, the Act's provisions are to be liberally interpreted and administered. *Id.*

KRS 418.040 provides that in any action in a court of record wherein it is made to appear that an actual controversy exists, the plaintiff may ask for a declaration of rights, either alone or with other relief, and the court may make a binding judgment. The party seeking relief must show that an **actual, justiciable controversy** exists; *i.e.*, proceedings for a declaratory judgment must not merely seek advisory answers to abstract questions. *Mammoth Medical, Inc.*, 265 S.W.3d

-20-

at 209–10 (Ky. 2008) (citing *Axton v. Goodman*, 205 Ky. 382, 265 S.W. 806 (1924)). To determine whether a justiciable controversy exists, the court must consider "both the appropriateness of the issues for decision and the hardship of denying judicial relief." *Combs v. Matthews*, 364 S.W.2d 647, 648 (Ky. 1963).

Even where a justiciable controversy is shown to exist, the court enjoys discretion under the Act's provisions to postpone adjudication. *W.B. v. Commonwealth, Cabinet for Health & Family Servs.*, 388 S.W.3d 108, 112 (Ky. 2012) ("KRS 418.065 clearly anticipates that there will be occasions when it will not be best to address the controversy at the time of the petition"). The Act provides as follows:

> The Court may refuse to exercise the power to declare rights, duties or other legal relations in any case where a decision under it would not terminate the uncertainty or controversy which gave rise to the action, or in any case where the declaration or construction is not necessary or proper at the time under all the circumstances.

KRS 418.065. As a matter of judicial policy, the court should decline to exercise its jurisdiction where "proper judicial administration requires that action be deferred by the court until the agency has acted and the court may then review its action." *Preston v. Meigs*, 464 S.W.2d 271, 274–75 (Ky. 1971).

We review *de novo* a court's determination of whether an "actual controversy" exists. *Bingham Greenebaum Doll, LLP, v. Lawrence*, 567 S.W.3d 127, 129 (Ky. 2018). The court's use of its discretion as to whether it should

exercise jurisdiction is reviewed by the standard of abuse of discretion. *Gwaltney v. Commonwealth Bd. of Soc. Work*, 644 S.W.3d 270, 274 (Ky. App. 2022).

While the conflict in these proceedings concerning the anticipated re-routing of Bartley Drive may seem inevitable on the facts before us, there is no reason to conclude that it is, in fact, unavoidable. Metro Government has not yet decided to authorize the closure of the terminus of Bartley Drive. It has merely required that the road be realigned as envisioned by the credit union's development plan. A road closure is not required to facilitate construction of the credit union branch or access to Bardstown Road. In its resolution, the legislative council anticipated and recognized the possibility that the binding-elements portion of the approval might require amendment; thus, it expressly provided that further review by the Planning Commission might be required. It specifically retained authority to amend the approval's requirements and to take final action with respect to decisions concerning Bartley Drive.

We agree with SouthPointe that the dispute concerning Bartley Drive may well be resolvable by application of law to facts as they might be developed though litigation. Nevertheless, we cannot conclude that an actual claim requiring judicial relief exists at this point. This is true because no claim has arisen against SouthPointe's property interests. The credit union's road closure application remains pending. Metro Government has not authorized the proposal to reroute

-22-

Bartley Drive; instead, it has specifically retained authority to amend the character of its approval for the requested zone change. Moreover, a separate civil action to determine whether any portion of Bartley Drive is a private road or public right-of-way is pending in another division of the circuit court.

Under these circumstances, it does not appear that SouthPointe's interests in its real property and the disputed intersection are affected by the circuit court's decision to deny adjudication of the underlying issue -- especially where it appears that the contested portion of the roadway may, in fact, be owned in fee simple either by the Commonwealth or Metro Government. Consequently, the court was justified in exercising discretion **not** to entertain the declaratory judgment action since SouthPointe would suffer no hardship if injunctive relief were denied. The court did not err by concluding that the matter is non-justiciable, and we affirm its decision to dismiss SouthPointe's request for declaratory judgment and injunctive relief. The matter is simply not yet ripe for adjudication.

Next, SouthPointe argues that the circuit court erred by failing to conclude that Metro Government's approval of the rezoning application was arbitrary and capricious. It argues that the circuit court erred by granting summary judgment because Metro Government's decision to alter the T-intersection at Bardstown Road and SouthPointe Commons Boulevard was not supported by substantial evidence. We disagree.

-23-

If a legislative body decides to change the zoning classification of a tract of land, its decision will not be considered arbitrary where it is based upon substantial evidence. *See American Beauty Homes Corp. v. Louisville and Jefferson County Planning and Zoning Comm'n*, 379 S.W.2d 450, 456 (Ky. 1964). Evidence is deemed substantial where it is sufficiently probative to convince a reasonably minded person. *Danville–Boyle County Planning and Zoning Comm'n v. Prall*, 840 S.W.2d 205, 208 (Ky. 1992). Upon review, we do not substitute our judgment for that of the legislative body. *City of Louisville v. McDonald*, 470 S.W.2d 173, 178 (Ky. 1971).

In its brief, SouthPointe reports that in 2010, it was required to pay for a comprehensive study of the impact that its development would have on "***all*** traffic in the surrounding areas and the Bardstown Road corridor." It explains that the traffic impact study specifically addressed the intersection of SouthPointe Boulevard and Bardstown Road and that Metro Government "concluded that it could only have three legs due to the impact a fourth leg would have on traffic." SouthPointe contends that "[t]he problem here is that the administrative record lacks substantial evidence showing that adding a fourth leg to the Intersection in 2020 would not have the same ruinous impact on traffic that Metro feared in 2010." It contends that the only traffic impact information included in the administrative record before the circuit court was Diane Zimmerman's limited

-24-

study. It argues that the Comprehensive Plan requires Metro Government to evaluate the impact of an additional leg of traffic at the intersection along the entire corridor, including: the nearby freeway, elementary school, and SouthPointe Commons.

We have reviewed the entirety of the lengthy administrative record. As summarized above, the record indicates that Metro Government sufficiently evaluated the impact of an additional leg of traffic at the intersection. The Planning Commission debated the obvious traffic impact issues at length. It reviewed the traffic impact study submitted by the credit union and the criticism thereof. It concluded that the credit union would be required to make certain roadway improvements to ensure traffic safety and efficiency. These improvements included: aligning Bartley Drive with the signalized intersection; adding a deceleration lane to southbound Bardstown Road to allow for right turns onto Bartley Drive; and expanding Bardstown Road to add a left-turn lane to northbound Bardstown Road at the intersection. These improvement requirements appear proportional to the size and nature of the development of the credit union's branch.

Additionally, the Commission was aware that a recently awarded grant was set to fund the tools necessary to make the traffic signals along Bardstown Road adaptive to traffic flow both to and from the nearby expressway.

Furthermore, as a safeguard against building significant traffic from the west side of Bardstown Road, the Planning Commission recommended that binding elements require a further traffic study if the subject property were to be used for any other purpose or if the second tract was developed at some point.

Based upon relevant evidence before it, Metro Government made extensive and detailed findings with respect to the impact that changes at the intersection would have on traffic flow. Given the relatively small scale of the proposed development, Metro Government was convinced by the expert testimony that the improvements to the intersection would alleviate safety and efficiency concerns arising from an additional leg of traffic.

We are unwilling to say that its decision not to require a more intense analysis of traffic along the corridor was arbitrary. Nor can we say that a decision to authorize an additional leg of traffic (where one was not authorized in the 2010 proceedings) was improper. Approval of the zone change application -- subject to the binding elements -- was based upon substantial evidence. Metro Government's decision was not arbitrary or capricious -- nor did it act in an *ultra vires* capacity in excess of its legitimate powers.

Accordingly, we affirm the judgment of the Jefferson Circuit Court.


ALL CONCUR.

BRIEFS FOR APPELLANTS:

Christopher W. Brooker
Jonathan L. Baker
Jordan M. White
Louisville, Kentucky

BRIEF FOR APPELLEE
EVANSVILLE TEACHERS
FEDERAL CREDIT UNION
D/B/A LIBERTY FEDERAL
CREDIT UNION:

Bart L. Greenwald
James L. Adams
Louisville, Kentucky

BRIEF FOR APPELLEES
LOUISVILLE/JEFFERSON
COUNTY METRO GOVERNMENT,
LOUISVILLE AND METRO
PLANNING COMMISSION AND
LEGISLATIVE BODY OF THE
LOUISVILLE/JEFFERSON
COUNTY METRO GOVERNMENT:

Michael J. O'Connell
Jefferson County Attorney

Anne P. Scholtz
John F. Carroll
Assistant Jefferson County Attorneys
Louisville, Kentucky